THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BARBARA FRIG, Defendant-Appellant.

Third District    No. 80-645

Opinion filed September 30, 1981.

ALLOY, J., dissenting.

Edward J. Kuleck, Jr., of Ottawa, for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Kenneth A. Fedinets, Mark L. Rotert, Melbourne A. Noel, Jr., and Herbert Lee Caplan, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

The defendant, Barbara Frig, appeals from her conviction for theft following a bench trial in the Circuit Court of La Salle County. The court sentenced her to two years' probation and ordered her to pay restitution in the amount of $8,259.48.

On appeal, Mrs. Frig argues, *inter alia*, that she was not proved guilty beyond a reasonable doubt. The facts reveal that Mrs. Frig was employed as an office manager for the State's Attorney's office since 1975, when she was 19 years old. She was promoted to the position of office manager in September of 1978. She earned between $7,000 and $8,000 per year. The office of the State's Attorney was located on the fourth floor of the County Courthouse in downtown Ottawa. However, in November 1979, the office was moved to a new location near Interstate 80. Mrs. Frig had personal charge of the restitution fund. She handled the books and the day-to-day work involving the fund. She deposited the fund's receipts from time to time in an account at the Ottawa National Bank. Checks were written to restitution fund recipients from this account. Between deposits, cash and checks received were kept by Mrs. Frig in envelopes in a drawer of her desk. There was no office policy concerning the frequency of deposits. Deposits were often made weekly, although sometimes the funds might remain in her drawer from four days to three weeks between deposits. In December of 1978 (the beginning of the 1979 fiscal year), the account contained $14,095.57. For the first five months of the fiscal year, the account balance varied from a low of $10,800 to a high

of about $17,000. However, Mrs. Frig deposited no money into the bank account during the months of May, June, July, August, or September of 1979. At the end of September, the account showed a balance of only $477.11. On October 8, 1979, a deposit of $9,395.78 was placed into the bank account. No deposits were made in November or December of 1979.

Mrs. Frig testified that she did not make regular deposits after April 1979 because her work load had substantially increased. A full-time assistant was hired for the civil division in mid-April, and Mrs. Frig was assigned secretarial duties for him, in addition to her previous duties.

Evidence was presented which indicated that others in the office were aware that Mrs. Frig kept money in her desk. Other evidence indicated that the money was packed by Mrs. Frig, prior to the move to the new office, and that the boxes containing the money package, along with the other contents of Mrs. Frig's desk, sat in the office for several days. The boxes were then transported by the movers to the new office building. There they were unpacked by Mrs. Frig and placed in her desk. Testimony revealed that during the first week at the new office a variety of personnel would have had ready access to the desk and its contents.

The fiscal year of the State's Attorney's office begins on December 1. At such time an independent audit is conducted. Preliminary work papers for the audit were given to Mrs. Frig at the beginning of December 1979. These were returned to the auditor on December 10, 1979. The auditor determined that the papers were completely incorrect. They were resubmitted to Mrs. Frig, who returned them to the auditor on January 3, 1980. After a complete audit of the restitution account, the auditor determined that $59,442.03 in restitution funds had been received by Mrs. Frig, but only $30,440.40 had been deposited into the account at the Ottawa National Bank. On January 3, 1980, Mrs. Frig tendered an additional $19,722.83, of which $2,400 was cash and the rest checks. The court found that the checks included funds collected in June, July, August, September, October, and November of 1979, which had been recorded but not deposited, and also included some $10,000 that had not been recorded as received. The auditors found evidence of some additional payments out of the fund, and concluded that $8,618.26 remained unaccounted for. However, other payments were discovered to have been made to fund recipients by Mrs. Frig. Accordingly, the court found the actual discrepancy to be $8,259.48, such figure being the difference of money received during that fiscal year from the money actually deposited in the checking account.

On January 3, 1980, Mrs. Frig informed the State's Attorney that the restitution account was short and she thought the money had been thrown out during the move. Mrs. Frig testified that the unpacking of the boxes in

the new office was done in a hurried fashion. She merely threw the contents of the box marked "Barb's Desk" into her desk, and did not notice whether or not the money was there. Approximately a week and a half later, she organized her desk and discovered that the envelope she had marked "Cash" was missing. She testified that during this week and a half, many persons who were not members of the office were coming in and moving around the office, and that persons were present when she left at 4:30 p.m. She testified that she thoroughly searched the office during the next two weeks. She did not tell anyone about the missing envelope because she was scared, upset, panicked, and believed that a search would turn up the missing envelope. When the annual audit came in December, she attempted to catch up with her book work. She testified that, when the accountant asked her if she had any more deposits, she informed him that she did, but that money was missing and she was attempting to locate it. At a subsequent meeting she informed the accountant and the State's Attorney that she thought the money was lost or thrown out.

The conviction in this case suffers from a fatal defect. No corpus delicti has been established. That is to say, there is insufficient evidence that a crime has been committed. What the State succeeded in establishing was that a sum of money disappeared from the State's Attorney's office. It could have been lost. It could have been thrown out with the trash. Mrs. Frig could have taken it, of course, along with numberless other persons. Whether the money was stolen and whether Mrs. Frig took it is a matter for guess, speculation, and conjecture. The evidence does not warrant such a conclusion.

It is undisputed that Mrs. Frig had personal charge of the La Salle County State's Attorney's restitution fund. She handled the record keeping books and the deposits for the fund. It is clear from the record that all office personnel knew that the funds were kept in envelopes in Mrs. Frig's unlocked desk. Prior to the discovery of the missing funds, the State's Attorney's office was moved across town. The office, including Mrs. Frig's desk contents, were packed in boxes, moved, and unpacked in hurried fashion. Moreover, the sloppy procedures for the fund management (i.e., irregular bank deposits, storage of large amounts of cash in an envelope in an unlocked desk drawer) were in effect long before Mrs. Frig assumed her duties. In fact, prior to her employment, there had been theft from the fund. Upon investigation, one of the courthouse janitors was apprehended as the perpetrator.

Mrs. Frig had control of and access to the restitution fund, but this was not exclusive. To the contrary, the record manifestly reveals that many persons had ready access to the fund's proceeds.

In order to prove that a crime was committed, that money was stolen,

it is necessary for the prosecution to show that someone took it. Here, the State claims that someone was Mrs. Frig.

■█ █ At this juncture, it is important that we remind ourselves that a person is considered innocent until proved guilty. To warrant conviction on circumstantial evidence the proof must be of a conclusive nature and tendency. It must lead on the whole to a satisfactory conclusion and providing certainty that the accused and no one else committed the crime. *People v. Widmayer* (1948), 402 Ill. 143.

■█ The evidence in this case provides us with no such certainty. The State was unable to trace a single penny of the missing proceeds to Mrs. Frig. It presented no evidence of changed lifestyle. There was no evidence that Mrs. Frig had made any large purchases, deposited more money in her personal bank account than she and her husband received as earnings, went on any elaborate vacations or had upgraded her standard of living in any way. There was no evidence that she was in any financial difficulty. Moreover, Mrs. Frig had an excellent reputation in the community for being truthful and honest. The State presented no evidence to the contrary. While evidence of good reputation is not proof of innocence, it cannot be entirely disregarded and may be sufficient to raise a reasonable doubt of guilt, and where such evidence is uncontroverted, it must be given some consideration and weight. *People v. De Suno* (1933), 354 Ill. 387.

What did the State prove? That Mrs. Frig was the employee charged with administering the restitution fund, that she made no deposits for a five-month period, and that approximately $8,000 was missing. This does not lead to a satisfactory conclusion that a crime was in fact committed. Moreover, it does not lead to a satisfactory conclusion beyond a reasonable doubt that Mrs. Frig, and no one else, was the perpetrator.

Accordingly, the judgment of the Circuit Court of La Salle County is reversed.

Reversed.

SCOTT, P. J., concurs.

Mr. JUSTICE ALLOY, dissenting:

I must respectfully dissent from the majority opinion in the above case.

The Circuit Court of La Salle County noted that the circumstantial evidence of the defendant's guilt was sufficient to prove her guilty of the crimes of theft and official misconduct beyond a reasonable doubt. In so finding, the court noted specifically the drastic change in April 1979 of how defendant dealt with the restitution of fund moneys. Prior to April,

she made deposits at the bank across the street at regular intervals, not later than three weeks at any time. From April 1979 through January 1980 she made only one deposit. That deposit of a considerable sum in October 1979 was made after the September report indicated that the bank account for the fund was almost completely depleted. The court indicated that it felt the deposit was made to avoid the danger of an overdraft and the questions such a situation would bring concerning the missing money. The court also found it significant that the defendant testified that she did not notice the envelope was missing for a week and a half after the early November move, yet she also testified that during this time she received restitution funds, which in her normal course of behavior she would have placed in the envelopes immediately upon receipt. Finally, the court found it significant that the defendant did not notify anyone of the missing moneys until the time the accountants brought the issue up in January 1980. The court acknowledged that there were possible explanations for the money's disappearance which might be consistent with the defendant's innocence. However, the court found that the only reasonable hypothesis explaining the missing money, and the defendant's behavior, was that the defendant took it. While we might not convict on the evidence in this case, we should not reject the trial court decision when supported by the record.

For the reasons stated, therefore, I believe that the order of the Circuit Court of La Salle County in the instant case should be affirmed.